FILED

2013 Jul-11 AM 10:16
U.S. DISTRICT COURT
N.D. OF ALABAMA



JUL 10 2013

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

Scott Lee, individually and )
as a representative of the class defined )
herein, )
  )
  )
**Plaintiff,** )
  ) CASE NO. 7:13CV 1288 HGD
v. )
  )
Comcast Cable Communications, Inc. )
  )
**Defendant.** )

## CLASS ACTION COMPLAINT

Plaintiff Scott Lee (hereinafter "Plaintiff" or "Mr. Lee"), on behalf of himself and the Class defined herein, states the following as his Complaint against Defendant Comcast Cable Communications, Inc. ("Comcast").

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this action under its diversity jurisdiction, 28 U.S.C. § 1332.  The parties are diverse, and the amount in controversy is greater than $75,000.00.

2.     This Court also has jurisdiction over this matter under its Federal Question jurisdiction, 28 U.S.C. §1331, because the RICO claim pleaded herein, 18 U.S.C. §1964 (d). The Court has jurisdiction over the State Law claim pursuant to the Court's supplemental jurisdiction, 28 U.S.C. §1367.

3.      Venue is proper in this action under 28 U.S.C. § 1391 because this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## PARTIES

4.      Plaintiff Scott Lee is over the age of nineteen (19) years, and is a resident of Etowah County, Alabama.

5.      Defendant Comcast Cable Corporations, Inc., is headquartered in Pennsylvania and does business in Alabama as referenced below.

6.      Plaintiff is the principal in a company located in Gadsden, Alabama, named Lee Investment Consultants, LLC ("Lee Investment").

## FACTS

7.      Lee Investment owns Unit A213 in the Capstone Quarters Condominium Complex located at 700 14th Street, Tuscaloosa, Alabama 35401.

8.      By virtue of ownership of a unit in the Capstone Quarters Complex, Lee Investment is a member of the Capstone Quarters Condominium Association, Inc. ("CQCA"). This is the association for owners of condominium units that collects monthly dues to go toward handling those issues that are of common interest to the owners.

9.      Lee Investment's principal, Scott Lee, handles the affairs relating to

2

the condominium unit, and he sees to it that Lee Investment pays its $231.00

condominium Owner's Association dues every month.  Those dues have been paid

by Lee Investment since the unit was purchased in 2005.

    10.    CQCA signed an agreement with Comcast of Alabama, Inc. which is

a corporation affiliated with Comcast, on or about August 8, 2005 (Ex. A hereto).

The contract is entitled Bulk Installation and Services Agreement (the "BSA").

    11.    The BSA has a term of ten (10) years and states the following:

    1.    The Company agrees to provide Preferred Service
consisting of "Limited," "Standard" and "Value
Pak" tiers of service to 410 outlet(s) in 143 units and
the common areas. As of the date of this Bulk
Addendum, Preferred Service consists of the channel
lineup set forth on Exhibit A attached hereto which
is subject to change from time to time. The Owner
shall pay the Company a monthly per unit service
fee for Preferred Service equal to $24.95 per unit for
total monthly billing of $3567.85, plus all applicable
taxes and fees. The common area outlets will receive
complimentary Preferred Service. The monthly per
unit service fee may be increased by the Company
upon thirty (30) days written notice consistent with
service rate increases applicable to residential
subscribers in the City.

    2.    Any hearing impaired or legally blind unit owner
who does not occupy the unit with a non-hearing
impaired or sighted person may discontinue service
under this Bulk Addendum without incurring
disconnect fees, penalties or subsequent service
charges.

3.      Monthly per unit service fees pursuant to this Bulk
Addendum shall be due and payable upon receipt of
an invoice and shall be subject to an administrative
fee in accordance with the Company's standard
business policies if not paid within fifteen (15)
calendar days of receipt thereof. The Company may
terminate this Bulk Addendum upon written notice
to Owner in the event payment of the monthly per
unit service fee remains unpaid for sixty (60) days.

(Ex. A, p. 12).

12.    The BSA in substance makes Comcast the exclusive supplier of cable

television services for Capstone Quarters. Comcast agreed that it would install the

wiring and other hardware necessary to equip each unit, and the common areas,

with cable television service.  In exchange CQCA agreed that it would pay

Comcast "a monthly per unit service fee for 'preferred' service equal to $24.95 per

unit for total monthly billing of $3,567.85, plus applicable taxes and fees."

13.    That $24.95 monthly per unit billing pays for the provision of

"limited", "standard", and/or "value pak" tiers of services to 410 outlets in 143

units at the condominium complex and the common areas." The cannel lineup for

the above-referenced tiers of services is supposed to be attached as Exhibit A to

the "Bulk Bill Addendum- Video Only" attached to the Agreement. However, the

"Exhibit A" in the Agreement provided plaintiff is blank.

4

14.     While the channel line-up is not specified, the channel line-up for these levels is generally the lowest price point for cable service, and does not include high definition channels, movie channels, pay-per-view options, etc. This tier of services has been labeled differently over the years, but for ease of reference herein, that suite of services will be referred to as "basic cable".

15.     A portion of monthly CQCA assessment goes to pay the CQCA Bulk Installation and Services Agreement fee, computed at $24.95 for each member.

16.     While the basic cable service of $24.95 is supposed to be provided residents of Campus Quarters, pursuant to the Bulk Installation and Services Agreement, any services beyond the basic cable tier need to be purchased by the condominium owners. The Bulk Installation and Services Agreement states the following regarding expanded cable television services:

> 4.     In addition to Preferred Service, the Company may provide to individual residents certain optional services, including, but not limited to, pay television services ("Expanded Service"). Expanded Service will be addressed in separate agreements with individual unit residents. Owner assumes no liability or responsibility for service charges for Expanded Services contracted for by individual residents.

(Ex. A, p. 12).

5

17.    Mr. Lee purchased additional services from Comcast, including expanded channels including HD channels, and access to On Demand movies and events.

18.    Mr. Lee purchased these additional services from Comcast by way of a bundle of cable and internet services. However, neither he, nor any of the Class members receive credit for the basic tier services that are paid for by CQCA through Bulk Installation and Services Agreement.

19.    In this way, Mr. Lee and Lee Investment pay for the services twice, once through that portion of their monthly CQCA dues that go toward the monthly $3,567.85 paid to Comcast of Alabama, Inc., and once through the separate agreement, as required, with Comcast for "additional" services.

20.    Not only are Mr. Lee, Lee Investments, and all Capstone Quarters residents who subscribe to Comcast for services beyond the basic tier affected by this practice, but Comcast does not provide a proper credit to many other bills sent to customers that are served by substantially similar Bulk Installation and Services Agreements throughout the country.

21.    Plaintiff and the class have been damaged in that they are paying twice for the same services.

6

## CLASS ACTION ALLEGATIONS

22.     Class Definition: Pursuant to Fed.R.Civ.P. 23(b)(1), (2) and (3),

Plaintiff brings this action on behalf of himself and all others similarly situated, as

members of the proposed Plaintiff Class. The proposed Plaintiff Class is defined

as follows:

> All persons within the applicable statute of limitations
> period living in a multi-unit housing complex that is served
> by a Bulk Installation and Services Agreement or like
> agreement where a basic suite of Comcast Cable television
> services is paid for in bulk by an owners' association, or
> like combination of unit owners, and who purchase
> additional services from Comcast, but get no credit for
> cable services already purchased and paid for through the
> owners' association agreement with Comcast.

23.     Numerosity: The members of the Class are so numerous that their

individual joinder would be impracticable in that: (a) the Class includes thousands,

if not hundreds of thousands of individual members; (b) the precise number of

Class members and their identities are unknown to Plaintiff but are well known to

Comcast and can easily be determined through discovery; (c) it would be

impractical and a waste of judicial resources for each of the thousands of

individual Class members to be individually represented in separate actions; and

(d) the relatively small amount of damages suffered by some of the Class members

does not make it economically feasible for those Class members to file an

individual action to protect their rights.

24.  Commonality/Predominance: Common questions of law and fact

predominate over any questions affecting only individual Class members. These

common legal and factual questions include, but are not limited to, the following:

a.  Whether Comcast is liable to Plaintiff and the class for
violations under the legal theories advanced herein;

b.  Whether Comcast has failed to properly credit the Plaintiff
Class for the monies paid through condominium or apartment
owners' associations for cable television services, where the
unit owners/lessees purchased additional services through
Comcast;

c.  Whether Comcast wrongfully withholds monies it collects from
customers who also pay for their services through
condominium owners' dues to a related company, and are
charged the same prices as customers who have not already
paid for a portion of their cable television services through a
condominium owners' association, or like association of unit
owners/lessees; and

d.  Whether Comcast has agreements with its affiliated entities that
collect a portion of cable television bills concerning a credit to
their bills with Comcast.

e.  Whether the combination of Comcast and Comcast of Alabama,
Inc., is a RICO enterprise as defined by 18 U.S.C. §1961 (4).

f.  Whether failing to account for the payments made to Comcast
of Alabama, Inc., and sending false bills, and collecting monies
not due and owing is a "pattern of racketeering" activity as
defined by 18 U.S.C. §1961 (5).

g.    Whether paying for the same services twice is a RICO injury pursuant to 18. U.S.C. §1962 (d).

25.    <u>Typicality</u>: Plaintiff is typical of the claims of the Class members. Plaintiff and all Class members have been injured by the same wrongful practices engaged in by Comcast. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

26.    <u>Adequacy</u>: Plaintiff will fully and adequately assert and protect the interests of the Class.  Plaintiff retained counsel who is experienced in class actions and complex mass tort litigation. Neither Plaintiff nor their counsel have interests contrary to or conflicting with the interests of the Class.

27.    <u>Superiority</u>: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims by each of the Class members is economically unfeasible and impractical.  While the aggregate amount of the damages suffered by the class is in the millions of dollars, the individual damages suffered by each of the Class members as a result of the wrongful conduct by Comcast are too small to warrant the expense of individual lawsuits.  Even if the individual damages were sufficient to warrant individual lawsuits, the court system would be unreasonably burdened

by the number of cases that would be filed.

28.    Plaintiff does not anticipate any difficulties in the management of this litigation.

**COUNT I**
**(Class Claim Under RICO)**

29.    Plaintiff incorporates by reference, as if fully set out herein, paragraphs 1 through 28 above.

30.    The following facts constitute the elements of a claim for damages under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1961 et. seq.

31.    **RICO Enterprise:** At all times pertinent hereto, Comcast and Comcast of Alabama, Inc., combined to form an "enterprise" as the term is defined at 18 U.S.C. §1961(4). Those two entities combined to commit the predicate acts referenced below.

32.    **RICO Conspiracy:** At all times pertinent hereto, and at least since late 2005, Comcast conspired with Comcast of Alabama, Inc., to conduct the affairs of the above-referenced enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. §1962 (c) and (d). Comcast agreed with Comcast of Alabama, Inc., would sign agreements like the BSA with multi-unit

residential complexes to provide cable television services, which would then require the residents to use Comcast as their cable provider. Comcast would bill the residents for their services such as internet, or enhanced cable television services. Comcast was supposed to credit the customers their "basic" cable fee portion those bills. However, Comcast does not credit the "basic" cable fees. Instead, the residents get the same package that they would get if they ordered cable television services without their payment to CQCA. The residents, class members, are paying for basic cable television services twice.

33.   **Racketeering Acts**: The act of sending out bills that are supposed to include a credit for the basic service, but does not, is a fraudulent suppression of the scheme referenced above whereby both Comcast, and Comcast of Alabama, Inc., get paid for the same services. This fraudulent billing amounts to mail fraud in violation of 18 U.S.C. §1341, which is one of the enumerated RICO predicate acts listed at 18 U.S.C. §1961. These fraudulent bills have been sent repeatedly and regularly since at least 2005, such that they constitute a pattern of racketeering activity pursuant to 18 U.S.C. §1961(5).

34.   **RICO Injury**: Plaintiff and the class have been injured in their business and property by reason of the act listed above, pursuant to 18 U.S.C. §1962 (d). They have had to pay for basic cable television services twice, which is

a compensable injury under RICO.

WHEREFORE, Plaintiff, on behalf of the class articulated herein, requests damages sustained in an amount to be determined by struck jury, trebled pursuant to 18 U.S.C. §1962, and the costs of this action, including a reasonable attorney's fee.

## COUNT II
### (Class Claim for Unjust Enrichment)

35.     Plaintiff, on behalf of the class he seeks to represent, incorporates each of the preceding paragraphs as if fully set forth herein.

36.     Comcast has billed Plaintiff and the Plaintiff Class as if they had not already paid a portion of the amounts owing for cable television services through a condominium owners' association, or other like association, in a multi-unit residential complex.

37.     Plaintiff and the Plaintiff Class have paid twice for the basic cable services that are part of any package purchased by Plaintiff and the Plaintiff Class.

38.     These monies cannot be held by Comcast in equity and good conscience, and are due to be disgorged and paid to Plaintiff and the Plaintiff Class.

WHEREFORE, Plaintiff and the Plaintiff Class are entitled to damages in

an amount to be determine by struck jury.

## COUNT III
### (Class Claim for Fraud)

39.     Plaintiff, on behalf of the class he seeks to represent, incorporates each of the preceding paragraphs as if fully set forth herein.

40.     Defendant Comcast, every month, represents the amount due and owning for cable television and other associated services.

41.     That amount; however, is not due and owing.  The amount due and owing is actually less that is represented because Plaintiff and the Plaintiff Class should have received a credit for the amounts paid as part of a condominium owners' association, or other association of unit owners in a multi-unit residential complex.

42.     Plaintiff and the Plaintiff Class have relied upon the representation as to the amount owing on each bill.  The false representations were made either wilfully, with knowledge of the true facts, recklessly in that Comcast should have known the knowledge of the true facts, and acted without regard for the true facts; or negligently.

43.     Plaintiff and the Plaintiff Class relied upon the misrepresentations on the bills in paying amounts that otherwise were and are not due and owing.

WHEREFORE, Plaintiff and the Plaintiff Class are entitled to damages in an amount to be determine by struck jury.

## COUNT IV
### (Class Claim for Injunctive Relief)

44.     Plaintiff, on behalf of the class he seeks to represent, incorporates each of the preceding paragraphs as if fully set forth herein.

45.     The violations referenced above are ongoing, and monetary relief is an adequate remedy.  Only an injunctive relief will end the ongoing violations and continually accruing damage to the Plaintiff and the Plaintiff Class.  As such, Plaintiff and the Plaintiff Class request that an injunction be entered:

   a.     Enjoining Comcast from continuing to bill Plaintiff and the Plaintiff Class amounts that do not credit amounts paid by Plaintiff and the Plaintiff Class through a condominium owners' association, or other organization of unit owners in a multi-unit residential complex where that association has a contract with Comcast or an affiliate to purchase cable television serves in bulk on behalf of its members; and

   b.     directing Comcast to cease sending bills that do not reflect amounts paid by its owners association as other like organizations of unit owners in a multi-unit residential complex.

WHEREFORE, Plaintiff and the class seek damages in an amount to be determine by struck jury.

14

## JURY DEMAND

Plaintiff demands a trial by jury of all issues triable.

Respectfully submitted,

_____
Brian M. Clark

OF COUNSEL:
WIGGINS, CHILDS, QUINN & PANTAZIS, LLC
The Kress Building
301 Nineteenth Street North
Birmingham, Alabama 35203
Phone: (205) 314-0500

**Please serve Defendant via Certified Mail at the following address:**

Comcast Cable Communications, Inc.
1500 Market Street
Philadelphia, PA 19102