# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| SCOTT LEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No.: 7:13-cv-01288-SGC |
| COMCAST CABLE COMMUNICATIONS, ) | |
| INC., et al., ) | |
| ) | |
| Defendants. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Presently before the undersigned for a report and recommendation is the motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* (the "FAA"), filed by the defendants, Comcast Cable Communications, Inc. and Comcast of Alabama, Inc. (Doc. 12). The parties have fully briefed the motion. (*See* Docs. 13, 16 & 17). For the reasons discussed below, the motion is due to be granted, and this action is due to be stayed pending arbitration.

## I. Background

In his amended complaint, the plaintiff, Scott Lee, alleges the defendants conspired to charge him and other similarly situated individuals for basic cable television service twice. According to Lee, his condominium association has an agreement with Comcast of Alabama for the provision of basic cable to units in the condominium complex, and a portion of the monthly dues he pays to the condominium association are remitted to Comcast of Alabama for this service. (Doc. 9 at ¶¶ 9-16) Because he wanted to receive channels and services beyond basic cable, Lee claims he was required to purchase a separate bundle of services from Comcast. (*Id.* at ¶¶ 17-18). In addition to expanded channels, HD channels, and access to On Demand movies,

1

that bundle includes basic cable. (*Id.* at ¶¶ 18-19). In this way, Lee claims, he pays for Comcast basic cable twice. (*Id.* at ¶¶ 19-20). Lee states counts against both defendants for a violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.*, ("RICO"), unjust enrichment, and civil conspiracy. (*Id.*). Lee also states a count against Comcast Cable for fraud. (*Id.*). On behalf of himself and the class defined in his amended complaint, Lee seeks compensatory damages, treble damages and attorneys' fees under RICO, and injunctive relief. (*Id.*).

The defendants assert Lee agreed to arbitrate his claims against them. (*See* Docs. 12, 13 & 17). To support their assertion, the defendants have submitted the affidavit of the Comcast marketing manager for the market where Lee receives Comcast services (Doc. 13-1 at 2-7), as well as copies of the work orders for installation of Comcast services at Lee's condo in August of 2010 and August of 2011 (*id.* at 48, 64) and the subscriber agreements disseminated in the market in question at those times (*id.* at 51-61, 67-78).[1] According to the defendants, Lee first subscribed to Comcast services in August of 2005. (Doc. 13 at 3; Doc. 13-1 at 2). He disconnected those services in July of 2008. (Doc. 13 at 3; Doc. 13-1 at 2). Lee re-subscribed to Comcast services in August of 2010, at which time he signed a work order acknowledging receipt of a subscriber agreement and agreeing to be bound by that agreement. (Doc. 13 at 3-4; Doc. 13-1 at 2, 4). Lee disconnected his Comcast services again in May of 2011 and re-subscribed to those services in August of 2011. (Doc. 13 at 4; Doc. 13-1 at 2-5). At the time of re-installation in August of 2011, someone named Savannah Lee signed a work order acknowledging receipt of a subscriber agreement and agreeing to be bound by that agreement.

---

[1] The defendants have also submitted a copy of an arbitration notice disseminated in the market in question in 2007 (*id.* at 3, 21-28) and an agreement for residential services disseminated in that same market in 2008 (*id.* at 3-4, 30-46). The plaintiff argues the 2011 subscriber agreement is the only relevant document here. (Doc. 16 at 5 n.2). There is no need to resolve that issue because the defendants rely on language found in the 2010 and 2011 subscriber agreements in their briefs (*see* Docs 13 & 17), and this language is the same (*see* Doc. 13-1 at 56-57, 72-73).

(Doc. 13-1 at 64). Both the 2010 and 2011 subscriber agreements provide that by using Comcast services the customer accepts the agreement and is bound by its terms. (Doc. 13-1 at 51, 67). One of those terms is an arbitration provision that states, in pertinent part, as follows:

    13.    **BINDING ARBITRATION**

        a.    **Purpose.** If you have a Dispute (as defined below) with Comcast that cannot be resolved through an informal dispute resolution with Comcast, you or Comcast may elect to arbitrate that Dispute in accordance with the terms of this Arbitration Provision rather than litigate the Dispute in court. Arbitration means you will have a fair hearing before a neutral arbitrator instead of in a court by a judge or jury.

        b.    **Definitions.** The term "Dispute" means any dispute, claim, or controversy between you and Comcast regarding any aspect of your relationship with Comcast, whether based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, negligence, or any other intentional tort), or any other legal or equitable theory, and includes the validity, enforceability or scope of this Arbitration Provision (with the exception of the enforceability of the class action waiver clause provided in paragraph 13(f)(2). "Dispute" is to be given the broadest possible meaning that will be enforced. As used in this Arbitration Provision, "Comcast" means Comcast and its parents, subsidiaries and affiliated companies and each of their respective officers, directors, employees and agents.

    . . . .

        f.    **Restrictions:**

          . . . .

            2.    ALL PARTIES TO THE ARBITRATION MUST BE INDIVIDUALLY NAMED. THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED OR LITIGATED ON A CLASS ACTION OR CONSOLIDATED BASIS OR ON BASES INVOLVING CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC (SUCH AS A PRIVATE ATTORNEY GENERAL), OTHER SUBSCRIBERS, OR OTHER PRESONS SIMILIARLY SITUATED UNLESS

>
> THE STATUTE UNDER WHICH YOU ARE SUING PROVIDES OTHERWISE.
>
> 3. ALL PARTIES WAIVE ANY CLAIM TO INDIRECT, CONSEQUENTIAL, PUNITIVE, EXEMPLARY, OR MULTIPLIED DAMAGES ARISING FROM OR OUT OF ANY DISPUTE WITH COMCAST UNLESS THE STATUTE UNDER WHICH THEY ARE SUING PROVIDES OTHERWISE.

(Doc. 13-1 at 56-57, 72-73). Although the subscriber agreements gave Lee the opportunity to opt out of the arbitration provisions within thirty days of first receiving the agreements without adverse consequences to his relationship with Comcast or the delivery of Comcast services, (*id.* at 56, 72), he did not do so (*id.* at 5).

## II. Discussion

The FAA's provisions manifest a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983). Under the FAA, a written arbitration provision in a contract evidencing a transaction involving interstate commerce is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In addressing a motion to compel arbitration pursuant to the FAA, a court employs a two-step inquiry. *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004). First, it determines whether the parties agreed to arbitrate their dispute. *Id.* (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). This first step of the inquiry involves two considerations: (1) whether there is a valid agreement to arbitrate, and (2) whether the dispute at issue falls within the scope of that agreement. *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006); *Webb v. Investacorp., Inc.*, 89 F.3d 252, 258 (5th Cir. 1996); *King v. Cintas Corp.*, 920 F. Supp. 2d 1263, 1267 (N.D. Ala. 2013); *Morales v. Chem. Lime Co.*, 2011 WL 12637372, at *1 (N.D. Ala. Feb. 22, 2011). When determining

whether the parties agreed to arbitrate their dispute, a court applies state law governing the formation of contracts, giving due regard to the federal policy favoring arbitration. *King*, 920 F. Supp. 2d at 1267 (citing *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005); *Wright v. Circuit City Stores*, 82 F. Supp. 2d 1279, 1283 (N.D. Ala. 2000) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *Morales*, 2011 WL 12637372, at *1; *Webb*, 89 F.3d at 258 (citing *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989)). At the second step of the inquiry, a court determines whether " 'legal constraints external to the parties' agreement foreclosed arbitration.'" *Klay*, 389 F.3d at 1200 (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 628). The language of § 2 has been interpreted to mean that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements" but that "[c]ourts may not [ ] invalidate arbitration agreements under state laws applicable only to arbitration provisions" because "[b]y enacting § 2 . . . Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed 'upon the same footing as other contracts.'" *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *see also Jenkins v. First Am. Cash Advance of Georgia, LLC*, 400 F.3d 868, 875 (11th Cir. 2005).[2]

---

[2] "[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). Here, the arbitration provision appears to delegate questions of arbitrability, other than as regards the clause waiving class proceedings, to the arbitrator by including "the validity, enforceability or scope of this Arbitration Provision (with the exception of the enforceability of the class action waiver clause provided in paragraph 13(f)(2))" in the definition of a "dispute" subject to arbitration. (*See* Doc. 13-1 at 56, 72). However, the defendants have not raised this issue in their motion or in their reply brief in support of that motion. Therefore, they have waived their right to enforce delegation of the "gateway" issues addressed herein (other than as regards the class proceedings waiver) to an arbitrator. *See In re Checking Account Overdraft Litigation*, 754 F.3d 1290, 1291-92 (11th Cir. 2014) (holding that defendant waited too long to invoke delegation clause where it asked district court to decide threshold question of arbitrability and did not mention delegation clause)

Here, as an initial matter, the defendants assert there is no question the subscriber agreement evidences a transaction involving interstate commerce and, therefore, the FAA governs disposition of their motion to compel arbitration. (Doc. 13 at 9-10). Lee does not dispute this assertion, which is supported by legal authority, *see Jenkins*, 400 F.3d at 874 ("The Supreme Court has 'interpreted the term "involving commerce" in the FAA as the functional equivalent of the more familiar term "affecting commerce"—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power.'"). Furthermore, the defendants have made a substantial showing that the parties entered into a valid agreement to arbitrate and the claims asserted by the plaintiff in this action fall within the broad scope of that agreement. According to the defendants, Lee accepted the subscriber agreement and agreed to be bound by its terms, including the arbitration provision, by using their cable television services and failing to opt out of the arbitration provision. (Doc. 13 at 12-15). *See Battels v. Sears Nat. Bank*, 365 F. Supp. 2d 1205, 1214-15 (M.D. Ala. 2005) (under Alabama law, plaintiffs' use of their credit cards after arbitration provision was added to credit card agreements constituted acceptance of provision); *Providian Nat. Bank v. Screws*, 894 So. 2d 625, 628 (Ala. 2003) (plaintiffs' failure to reject arbitration provision after receiving notice it was being added to credit card agreements amounted to acceptance of provision); *Losapio v. Comcast Corp.*, 2011 WL 1497652, at *3 (N.D. Ga. Apr. 19, 2011) ("[V]alid contracts, including contracts containing arbitration clauses, may be formed by a party's continued use or acceptance of services without objection.").

Once a party moving to compel arbitration makes this showing, "the burden shifts to the opposing party to present evidence that the arbitration agreement is not valid or that it does not apply to the dispute in question." *King*, 920 F. Supp. 2d at 1267. Lee does not dispute he

accepted the subscriber agreement and agreed to be bound by its terms, including the arbitration provision, by using the defendants' services and failing to opt out of the arbitration provision, or that his claims fall within the broad scope of the arbitration agreement. Rather, Lee opposes the defendants' motion to compel arbitration on the grounds (1) Comcast of Alabama is not party to the subscriber agreement or the arbitration provision contained in that agreement (Doc. 16 at 19-25), and (2) the waiver of class proceedings contained in the arbitration provision is unconscionable on its own and when read together with a damages limitation clause included in the subscriber agreement (*id.* at 7-19).

### A. Enforceability by Comcast of Alabama

Lee makes a number of arguments to support his position Comcast of Alabama cannot enforce the arbitration provision. First, he makes several arguments to the effect the Comcast parent corporation and its subsidiaries and affiliates are separate and distinct entities and the "Comcast" party to the subscriber agreement does not include Comcast subsidiaries and affiliates. (Doc. 16 at 20-22). Second, he argues Comcast of Alabama cannot take advantage of the arbitration provision because it is not a signatory to the subscriber agreement. (*Id.* at 22-23). These arguments ignore the language in the arbitration provision that defines "Comcast [Corporation]" as "Comcast [Corporation] and its parents, subsidiaries and affiliated companies and each of their respective officers, directors, employees, and agents." (Doc. 13-1 at 72). As the defendants note, Lee appears to concede Comcast of Alabama is a subsidiary of Comcast Corporation. (Doc. 16 at 22 n.6). Under Alabama law,[3] an entity that is neither a party nor signatory to an arbitration agreement may enforce the agreement as a third-party beneficiary if the contracting parties intended to bestow a direct benefit on the entity. *See Ex parte Stamey*,

---

[3] The Eleventh Circuit has clarified that applicable state law governs the question whether a non-party can enforce an arbitration provision against a party. *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1170-71 (11th Cir. 2011). The parties appear to agree Alabama contract law applies in this case.

7

776 So. 2d 85, 89, 92-93 (Ala. 2000). *See also THI of New Mexico at Vida Encantada, LLC v. Archuleta*, 848 F. Supp. 2d 1309, 1329 (D.N.M. 2012) (where arbitration agreement provided that patient waived her right to bring claims against health care facility "(including its agents, employees, servants, parents, subsidiaries and affiliates)," plain language of agreement demonstrated parties intended to convey benefits of agreement to persons and entities listed in parenthetical); *Sapiro v. VeriSign*, 310 F. Supp. 2d 208, 213 (D.D.C. 2004) (where arbitration agreement provided that " '[a]ny reference in the Agreement to SAIC will also be a reference to all subsidiaries and affiliated corporations . . . and the successors and assign of any of them,'" successor to affiliate and/or subsidiary of SAIC could enforce the agreement). The plain language of the arbitration provision reveals that Comcast of Alabama, whether a direct party to the subscriber agreement, is at the very least an intended direct beneficiary of the arbitration provision and, therefore, can enforce the provision.[4]

### B. Unconscionability

The Eleventh Circuit has held that "the enforceability of a particular class action waiver in an arbitration agreement must be determined on a case-by-case basis, considering the totality of the facts and circumstances." *Dale v. Comcast Corp.*, 498 F.3d 1216, 1224 (11th Cir. 2007).

> Relevant circumstances may include, but are not limited to, the fairness of the provisions, the cost to an individual plaintiff of vindicating the claim when compared to the plaintiff's potential recovery, the ability to recover attorneys' fees and other costs and thus obtain legal representation to prosecute the underlying claim, the practical affect the waiver will have on a company's ability to engage in unchecked market behavior, and related public policy concerns.

*Id.*

---

[4] Because it is clear Comcast of Alabama may enforce the arbitration provision as a third-party beneficiary, if not a party, there is no need to address Lee's equitable estoppel argument. (*See* Doc. 16 at 23-25). *See Stamey*, 776 So. 2d at 89 (party to arbitration agreement may be equitably estopped from asserting non-party cannot enforce agreement where claims against non-party are " 'intimately founded in and intertwined with'" claims against party).

"Under Alabama law, unconscionability is an affirmative defense to the enforcement of a contract, and the party asserting that defense bears the burden of proving it by substantial evidence." *Bess v. Check Express*, 294 F.3d 1298, 1306-07 (11th Cir. 2002) (citing *Green Tree Fin. Corp. v. Wampler*, 749 So. 2d 409, 417 (Ala. 1999); *Johnnie's Homes, Inc. v. Holt*, 790 So. 2d 956, 964 (Ala. 2001)). "To avoid an arbitration provision on the ground of unconscionability, the party objecting to arbitration must show both procedural and substantive unconscionability." *Blue Cross Blue Shield of Alabama v. Rigas*, 923 So. 2d 1077, 1087 (Ala. 2005). "Procedural unconscionability . . . deals with procedural deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms, today often analyzed in terms of whether the imposed-upon party had meaningful choice about whether and how to enter into the transaction." *Id.* (internal quotation marks omitted). "In determining whether an arbitration agreement is procedurally unconscionable, [the Alabama Supreme Court] has looked at whether the consumer could obtain the product from the vendor or from another vendor without agreeing to an arbitration provision." *Id.*

> Substantive unconscionability relates to the substantive contract terms themselves and whether those terms are unreasonably favorable to the more powerful party, such as terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction.

*Id.*

Lee argues the arbitration provision is procedurally unconscionable because he and similarly-situated persons "are all but forced to accept Comcast as their cable provider." (Doc. 16 at 14). However, the relevant inquiry is not whether Lee had a meaningful choice of cable providers but rather, whether he could have obtained Comcast services without agreeing to

9

arbitrate disputes with Comcast.  *See Rigas*, 923 So. 2d at 1087.  It is clear he could have done so.  The arbitration provision explicitly provides a procedure by which Lee could have opted out of the provision with "no adverse effect on [his] relationship with Comcast or the delivery of services to [him] by Comcast."  (Doc. 13-1 at 56, 72).  Lee further argues the arbitration provision is procedurally unconscionable because it was not provided to him or other Comcast subscribers until after installation of Comcast services.  (Doc. 16 at 15).  This argument, too, ignores the fact that the arbitration provision afforded Comcast subscribers the right to opt out of the provision within thirty days of first receiving it.  (*See* Doc. 13-1 at 56, 72).  Lee has failed to show that the arbitration provision is procedurally unconscionable.

      Lee argues the arbitration provision is substantively unconscionable because a waiver of class proceedings contained in the provision, on its own and when read together with a damages limitation clause included in the subscriber agreement, makes it economically unfeasible for him to pursue his claims.  (Doc. 16 at 7-19).  According to Lee, his maximum potential recovery on his RICO claim is $1,197.60—the monthly fee he pays for Comcast basic cable through his condominium association multiplied by 48 months in accordance with the four-year statute of limitations applicable to a RICO claim—because the damages limitation contained in the subscriber agreement precludes recovery of the treble damages provided for by RICO.  (*Id.* at 8).  Lee further claims the American Arbitration Rules for Commercial Arbitration, pursuant to which the arbitration provision states an arbitration is to be conducted, require an initial filing fee in the amount of $775.00, a final fee in the amount of $200.00, and arbitrator compensation estimated to amount to thousands of dollars.  (*Id.*).  Lee acknowledges that, pursuant to the arbitration provision, Comcast has agreed to advance these fees and costs but argues the risk he runs of having to reimburse Comcast if he does not prevail on his claims weighed against his

maximum potential recovery is so "chilling" as to make arbitration an unrealistic alternative to a class proceeding. (*Id.* at 8-9).

First, contrary to Lee's assertion, he is not precluded from recovering treble damages if he prevails on his RICO claim. Lee cites a damages limitation clause outside the arbitration provision to support his argument. (Doc. 16 at 6-8, 16-19 (citing Doc. 13-1 at 72).). He fails to recognize that recovery of the types of damages identified in the clause is precluded, "except as specifically provided in [the subscriber agreement]." (*See* Doc. 13-1 at 72). Although the arbitration provision also contains a waiver of "indirect, consequential, punitive, exemplary, or multiplied damages," it does not prohibit recovery of these damages if "the statute under which [a party is] suing provides otherwise." (Doc. 13-1 at 73). RICO provides for the recovery of treble damages by a prevailing plaintiff. 18 U.S.C. § 1964(c). Therefore, the arbitration provision does not prohibit their recovery. *See Losapio*, 2011 WL 1497652 at *5 (holding that similar limitation did not preclude recovery of punitive damages for violations of Stored Communications Act and Wiretap Act because those federal statutes provided for recovery of punitive damages). Accordingly, the cases Lee cites to support the position an arbitration provision precluding recovery of damages authorized by federal statute is unconscionable are inapposite. (*See* Doc. 16 at 16-19 (citing, e.g., *Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054 (11th Cir. 1998)). Although Lee may have waived his right to recover certain types of damages as to his other, state-law claims, his unconscionability argument focuses exclusively on his ability to recover treble damages as to his RICO claim.

Second, Lee has not demonstrated the waiver of class proceedings contained in the arbitration provision is unconscionable. Comcast asserts the economic unfeasibility argument advanced by Lee was rejected by the Supreme Court in *American Exp. Co. v. Italian Colors*

11

*Restaurant*, 133 S. Ct. 2304 (2013).  (Doc. 17 at 3-9).  In *Italian Colors*, the Supreme Court held that a contractual waiver of class arbitration was enforceable, even if a plaintiff's cost of individually arbitrating its federal statutory claim exceeded its potential recovery.  133 S. Ct. at 2312.  In so holding, the Supreme Court rejected the argument that enforcing the waiver barred the "effective vindication" of a federal statutory right because a plaintiff had no financial incentive to pursue its federal statutory claim individually in arbitration.  *Id.* at 2310-11.  The Supreme Court noted it had rejected a similar argument—"that class arbitration was necessary to prosecute claims 'that might otherwise slip through the legal system'"—in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011).  133 S. Ct. at 2312 (quoting *Concepcion*, 131 S. Ct. at 1753).  Ultimately, there is no need to decide whether, after *Concepcion* and *Italian Colors*, the FAA preempts Lee's economic unfeasibility argument because Lee has failed to demonstrate it would be economically unfeasible for him to pursue his claims individually in arbitration.  Lee relies heavily on the Alabama Supreme Court's decision in *Leonard v. Terminix Intern. Co., L.P.*, 854 So. 2d 529 (Ala. 2002), and the Eleventh Circuit's decision in *Dale* to support his economic unfeasibility argument.  (*See* Doc. 16 at 7-16).  The facts of those cases are easily distinguished from the circumstances present here.  *See Hornsby v. Macon County Greyhound Park, Inc.*, 2012 WL 2135470, at *10 (M.D. Ala. June 13, 2012) (declining to reach issue whether finding of unconscionability on basis of *Leonard* would be preempted by FAA under *Concepcion* because arbitration provision in question was not unconscionable under *Leonard*); *Chambers v. Groome Transp. of Alabama*, 41 F. Supp. 3d 1327, 1354 (M.D. Ala. 2014) (same).

In *Leonard*, the Alabama Supreme Court held that an arbitration provision precluding the plaintiffs from pursuing their claims through a class action was unconscionable under Alabama law because the expense the plaintiffs would incur to pursue their claims individually in

arbitration would exceed the amount in controversy, which was less than $500.00. 854 So. 2d at 535, 538-39. According to the court, this economic unfeasibility amounted to the deprivation of a meaningful remedy. *Id.* at 538. Central to the Alabama Supreme Court's holding was the limitation on recovery of indirect, special, and consequential damages also included in the arbitration provision at issue. *Id.*; *see also Hornsby*, 2012 WL 2135470 at *8 (noting damages limitation was "substantial motivator" for *Leonard* holding). It is also notable that the plaintiffs' claims did not entitle them to recover attorneys' fees, and the court appears to have assumed the plaintiffs would bear the costs of arbitration. *See Leonard*, 854 So. 2d at 541 (See, J., dissenting) ("[T]he majority accepts on its face the Leonards' assertion that the arbitration clause in this case requires them to pay prohibitively high arbitration costs. . . ."); *Taylor*, 292 F. Supp. 2d at 1345, 1345 n.8. By contrast, here, as discussed above, there is no limitation on Lee's recovery of treble damages if he prevails on his RICO claim. Furthermore, RICO provides for an award of reasonable attorneys' fees to a prevailing plaintiff, as well. 18 U.S.C. § 1964(c). Although Lee may have waived recovery of certain types of damages as to his other, state-law claims, none of which may entitle him to an award of attorneys' fees, his ability to recover treble damages and attorneys' fees as to his RICO claim provides sufficient incentive for Lee to pursue all of his claims in arbitration and for an attorney to represent him in that proceeding. At the very least, Lee has failed to demonstrate that the possibility of recovering treble damages and attorneys' fees as to his RICO claim is so insufficient an incentive as to render the arbitration provision unconscionable, as is his burden. Finally, pursuant to the arbitration provision, Comcast has agreed to advance the fees and costs associated with arbitrating Lee's claims, which Lee has no obligation to reimburse, if he prevails. Although Lee emphasizes there is a risk he will have to reimburse these fees and costs if he does not prevail, this risk is too speculative to justify

invalidation of the arbitration provision. *See O'Quin v. Verizon Wireless*, 256 F. Supp. 2d 512, 518 (M.D. La. 2003) ("The mere possibility that a party may have to share in the payment of the arbitrator's fees is not a sufficient reason to invalidate the agreement."). Notably, the Middle District of Alabama has distinguished *Leonard* on the same grounds that distinguish *Leonard* in this case. *See Taylor*, 292 F. Supp. 2d 1345, (M.D. Ala. 2003) (holding *Leonard* not applicable because (1) arbitration provision in question permitted plaintiff to request that defendant advance filing, administrative, and hearing fees, (2) federal statute under which plaintiff brought suit entitled him to recover attorneys' fees, should he prevail, and (3) arbitration provision did not limit damages recoverable by plaintiff); *Gipson v. Cross Country Bank*, 294 F. Supp. 2d 1251 (M.D. Ala. 2003). 294 F. Supp. 2d at 1263-64 (distinguishing *Leonard* on similar grounds).

In *Dale*, the Eleventh Circuit held that a waiver of class proceedings contained in a Comcast arbitration agreement was unconscionable under Georgia law to the extent it precluded Comcast subscribers from prosecuting state law claims based on the Cable Communications Policy Act of 1984, 47 U.S.C. §§ 521, *et seq.*, as a class. *Dale*, 498 F.3d at 1224. Central to the court's holding was the unavailability of attorneys' fees or costs under the federal law on which the plaintiffs' state law claims were premised. *See id.* at 1222-24. In fact, on this ground, the Eleventh Circuit distinguished *Dale* from three previous cases in which it held waivers of class proceedings contained in arbitration agreements to be enforceable. *See id.* at 1221-23 (distinguishing *Caley*, 428 F.3d 1359; *Jenkins*, 400 F.3d 868; *Randolph v. Green Tree Fin. Corp.-Alabama*, 244 F.3d 814 (11th Cir. 2001)). The court noted while *Caley*, *Jenkins*, and *Randolph* involved claims for which attorneys' fees and costs were recoverable, the case before it did not. *Id.* at 1221-22.[5]

---

[5] In *Randolph*, the plaintiff asserted claims under the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.*, which provides for an award of attorneys' fees. 244 F.3d at 815, 815; 15 U.S.C. § 1640(a). In *Jenkins*, the plaintiff

District courts in the Eleventh Circuit have recognized the distinction between *Dale* on the one hand and *Caley*, *Jenkins*, and *Randolph* on the other. For example, in *Honig v. Comcast of Georgia I, LLC*, 537 F. Supp. 2d 1277 (N.D. Ga. 2008), the Northern District of Georgia held that a class proceedings waiver in a Comcast arbitration agreement was not unconscionable under Georgia law because the Georgia Fair Business Practices Act, the state statute pursuant to which the plaintiff brought one of her claims, contained a fee-shifting provision. *Id.* at 1287. The availability of attorneys' fees for a prevailing plaintiff made *Honig* "more analogous to *Caley*, *Jenkins*, and *Randolph* than to *Dale*." *Id.* The Georgia federal district court further noted that Comcast had agreed to advance filing fees and arbitration costs, which a prevailing plaintiff had no obligation to repay, and the arbitration agreement provided a procedure by which the plaintiff could have opted out of arbitration without adverse consequences. *Id.* at 1288-89. *See also Sanders v. Comcast Cable Holdings, LLC*, 2008 WL 150479, at *10 (M.D. Fla. Jan. 14, 2008) (holding that class action waiver in Comcast arbitration agreement was not unconscionable under Florida law based on (1) availability of attorneys' fees under Florida Deceptive and Unfair Trade Practice Act, the basis for one of plaintiffs' claims, (2) Comcast's agreement to advance filing and arbitrators' fees, which a prevailing plaintiff had no obligation to repay, and (3) opportunity for plaintiffs to have opted out of arbitration agreement, which plaintiffs did not take); *Losapio*, 2011 WL 1497652 at *5 (holding that class action wavier in Comcast arbitration agreement was not unconscionable because federal statutes pursuant to which plaintiff brought her claims allowed for an award of attorneys' fees). Because, as discussed, Lee may recover attorneys' fees if he prevails on his RICO claim, Comcast has agreed to advance the fees and

---

asserted claims under Georgia's Racketeer Influenced and Corrupt Organizations Act, Ga. Code Ann. § 16-14-4, which permits an award of attorneys' fees to a prevailing plaintiff. 400 F.3d at 873, 878. In *Caley*, the plaintiffs asserted claims under the Age Discrimination in Employment Act, the Fair Labor Standards Act, the Employee Retirement Income Security Act, and Title VII of the Civil Rights Act of 1964, 428 F.3d at 1364, all of which contain a fee-shifting provision, 29 U.S.C. § 626(b) (ADEA), 29 U.S.C. § 216(b) (FLSA), 29 U.S.C. § 1132(g)(1) (ERISA), and 42 U.S.C. § 2000e-5(k) (Title VII).

costs associated with arbitrating Lee's claims, and Lee could have opted out of the arbitration provision in question without adverse consequences, this case, like *Honig*, *Sanders*, and *Losapio*, is more analogous to *Caley*, *Jenkins*, and *Randolph* than to *Dale*.[6]

The purpose of a class action " 'is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'" *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quoting *Mace v. Van Ru Credit Corp.*, 109 F. 3d 338, 344 (7th Cir. 1997)). " 'A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.'" *Amchem Products*, 521 U.S. at 617 (quoting *Mace*, 109 F.3d at 344). Here, the availability of treble damages and attorneys' fees as to Lee's RICO claim serves the same purpose. *See Andrews v. American Tel. & Tel. Co.*, 95 F.3d 1014, 1025 (11th Cir. 1996) ("[E]ven small individual claims under RICO can be feasible given the possibility of the award of treble damages and attorneys' fees to successful plaintiffs."). "As the Supreme Court has explained, the fact that certain litigation devices may not be available in an arbitration is part and parcel of arbitration's ability to offer simplicity, informality, and expedition, characteristics that generally make arbitration an attractive vehicle for the resolution of low-value claims." *Caley*, 428 F.3d at 1378 (internal quotation marks omitted) (internal citation omitted). Here, the arbitration provision in question is consistent with those goals.

---

[6] Lee also relies on the First Circuit's decision in *Kristian v. Comcast Corp.*, 446 F.3d 25 (1st Cir. 2006), and a Pennsylvania state court's decision in *Thibodeau v. Comcast Corp.*, 912 A.2d 874 (Pa. Super. Ct. 2006), to support his economic unfeasibility argument. As the Middle District of Florida noted in *Sanders*, "[a]lthough a number of courts have addressed Comcast's various attempts to inoculate itself from class action litigation, this [c]ourt must evaluate the present class action waiver through the prism of Eleventh Circuit case law." *Sanders*, 2008 WL 150479 at *10. Furthermore, a Pennsylvania federal district court has held that "[t]here can be little doubt that *Thibodeau* is no longer viable following the Supreme Court's decision in *Concepcion*." *Brown v. TrueBlue, Inc.*, 2011 WL 5869773, at *5 (M.D. Pa. Nov. 22, 2011).

### C. <u>Stay or Dismissal</u>

There does not appear to be a consensus as to whether a district court may dismiss rather than stay an action when compelling arbitration of all claims. *Compare Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration." (emphasis in original)), *and Choice Hotels Int'l., Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) ("Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."), *with Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 269-71 (3rd Cir. 2004) ("Here, the plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration. The direction that the Court 'shall' enter a stay simply cannot be read to say that the Court shall enter a stay in all cases except those in which all claims are arbitrable and the Court finds dismissal to be the preferable approach."). While the Eleventh Circuit has vacated a district court's dismissal of claims subject to arbitration and remanded the case with instructions to stay all claims pending arbitration, *see Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992), it has also affirmed district court orders compelling arbitration and dismissing the underlying cases, *see Samadi v. MBNA Am. Bank, N.A.*, 178 Fed. App'x 863, 866 (11th Cir. 2006); *Caley*, 428 F.3d at 1379. Because the express language of the statute provides that when a court determines an issue is referable to arbitration under an arbitration agreement, it "***shall*** on application of one of the parties ***stay*** the trial of the action until such arbitration has been had . . .," s*ee* 9 U.S.C. § 3 (emphasis added), and because the defendants specifically request a stay (Doc. 12), the undersigned will recommend that this action be stayed pending arbitration.

**III. Recommendation & Notice of Right to Object**

For the foregoing reasons, the undersigned **RECOMMENDS** that the defendants' motion to compel arbitration (Doc. 12) be **GRANTED** and this action be **STAYED** pending arbitration.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2), Fed. R. Civ. P., any party may file specific written objections to this report and recommendation within fourteen (14) days from the date it is filed in the office of the Clerk.  Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fourteen (14) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal.  Written objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  A copy of the objections must be served upon all other parties to the action.

**DONE** this 15th day of July, 2015.

_/s/ Staci G. Cornelius_
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE